1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

JEFFREY JOHNSON,

Plaintiff,

9

v.

10

CAROLYN W. COLVIN,

11

Defendant.

12

CASE NO. C16-5593JLR

ORDER AFFIRMING
DEFENDANT'S DECISION TO
DENY BENEFITS

13

## I.   INTRODUCTION

14

15

Plaintiff Jeffrey Johnson seeks review of the denial of his application for disability

16

insurance benefits.  Mr. Johnson contends that the Administrative Law Judge ("ALJ")

17

erred in evaluating the medical evidence, evaluating Mr. Johnson's testimony, finding

18

that he did not meet the Medical Vocational Guidelines for disability, assessing his

19

residual functional capacity ("RFC"), finding him capable of performing past work, and

20

alternatively finding him capable of performing work available in the national economy.

21

(Op. Br. (Dkt. # 9) at 1-2.)  Having considered the submissions of the parties, the relevant

22

portions of the record, and the applicable law, the court AFFIRMS Defendant

23

Commissioner Carolyn W. Colvin's ("the Commissioner") final decision and

ORDER - 1

1    DISMISSES the case with prejudice.

2                              **II.    BACKGROUND**

3        On July 25, 2014, Mr. Johnson protectively filed an application for disability

4    insurance benefits.  (Administrative Record ("AR") (Dkt. # 7) at 11.)  Mr. Johnson's

5    application was denied initially and on reconsideration.  (*Id*.)  The ALJ conducted a

6    hearing on November 20, 2015, at which Mr. Johnson alleged an amended disability

7    onset date of October 24, 2014.  (*Id*.)  After the hearing, the ALJ issued a decision

8    finding Mr. Johnson not disabled.  (*Id*. at 11-22.)

9        The ALJ utilized the five-step disability evaluation process,[1] and the court

10   summarizes the ALJ's findings as follows:

11
12       **Step one**:  Mr. Johnson did not engage in substantial gainful activity from October
         24, 2014, the alleged onset date of his disability, through December 31, 2015, his
13       date last insured.

14       **Step two**:  Through the date last insured, Mr. Johnson had the following severe
         impairments:  cervical herniated discs, degenerative disc disease, and bilateral
15       shoulder impingements status post-repair.

16       **Step three**:  Through the date last insured, Mr. Johnson did not have an
         impairment or combination of impairments that met or equaled the requirements
17       of a listed impairment.[2]

18       **RFC**:  Through the date last insured, Mr. Johnson could perform light work as
19       defined in 20 C.F.R. § 404.1567(b) with the following additional limitations:  He
         can never climb ladders, ropes, or scaffolds.  He can occasionally stoop, kneel,
20       crouch, and balance.  He can never crawl.  He cannot perform overhead reaching
         but can perform less than occasional pushing or pulling with his arms.  He can
21       stand or walk for an hour at a time for a maximum of three hours in an eight-hour

22       _____
         [1] 20 C.F.R. § 416.920.

23
         [2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

day.  He can sit without limitations but requires the ability to stand after sitting for one hour.  He can occasionally climb ramps and less than occasionally climb stairs.  He should avoid exposure to high impact vibration.  He should avoid concentrated exposure to hazards and cannot be exposed to unprotected heights.

**Step four**:  Through the date last insured, Mr. Johnson was able to perform his past relevant work as an operation researcher as it is generally performed.  Therefore, he is not disabled.

**Step five**:  Alternatively, because jobs exist in significant numbers in the national economy that Mr. Johnson could have performed through the date last insured, he is not disabled.

(*See* AR at 13-22.)  The Appeals Council denied Mr. Johnson's request for review, making the ALJ's decision the Commissioner's final decision.  (*See* AR at 1-6.)[3]

## III.   ANALYSIS

Pursuant to 42 U.S.C. § 405(g), this court must set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

### A.   Evaluation of the Medical Evidence

Mr. Johnson argues that the ALJ erred in evaluating the medical evidence in the record.  (*See* Op. Br. at 10-16.)  Where the medical evidence in the record is not conclusive, resolving "questions of credibility and resolution of conflicts" is solely the responsibility of the ALJ.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

---

[3] The court omits the rest of the procedural history in this matter because it is not relevant to the outcome of the case.

1    In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r, Soc. Sec.*

2    *Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

3         In resolving questions of credibility and conflicts in the evidence, an ALJ's

4    findings "must be supported by specific, cogent reasons." *See Reddick v. Chater*, 157

5    F.3d 715, 725 (9th Cir. 1998).  The ALJ can satisfy this requirement "by setting out a

6    detailed and thorough summary of the facts and conflicting clinical evidence, stating his

7    interpretation thereof, and making findings." *Id.*  The ALJ may also draw inferences

8    "logically flowing from the evidence." *Sample*, 694 F.2d at 642.  Further, the court itself

9    may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*

10   *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

11

12        The ALJ must provide "clear and convincing" reasons for rejecting the

13   uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81

14   F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is

15   contradicted, that opinion "can only be rejected for specific and legitimate reasons that

16   are supported by substantial evidence in the record." *Id*. at 830-31.

17        **1.      Cindy Toraya, M.D.**

18        Mr. Johnson argues that the ALJ erred by failing to give a specific and legitimate

19   reason to discount the opinion of examining physician Cindy Toraya, M.D.  (*See* Op. Br.

20   at 10-13.)  The court disagrees.

21        Dr. Toraya examined Mr. Johnson in October 2014 and opined that he could walk

22   or stand for no more than two hours in a workday, sit for no more than four hours with

23

ORDER - 4

position changes, and lift or carry no more than 20 pounds occasionally and 10 pounds frequently.  (*See* AR at 1085.)  Dr. Toraya also opined that Mr. Johnson should perform no climbing, balancing, stooping, kneeling, crouching, or crawling.  (*See id*.)  The ALJ gave some weight to Dr. Toraya's opinion, incorporating the lifting and carrying restrictions into the RFC.  (*See* AR at 20.)  However, the ALJ discounted the other limitations because, among other reasons, the severe limitations were inconsistent with Dr. Toraya's objective findings and other treatment records.  (*See id*.)

An ALJ need not accept a physician's opinion if it is inadequately supported by clinical findings.  *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Here, Dr. Toraya found on physical examination that Mr. Johnson was able to walk to and from the examination room without difficulty, could perform a tandem walk, had fully intact motor function in his legs, and had full range of motion in his hips, knees, and ankles.  (*See* AR at 1083-84.)  An ALJ also need not accept a physician's opinion if it is inadequately supported "by the record as a whole," including treatment records.  *See Batson*, 359 F.3d at 1195; *see also Tommasetti v. Andrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, other treatment providers noted intact muscle strength, normal gait, and only mild degenerative spinal changes.  (*See* AR at 1179, 1191.)  Mr. Johnson reported to these providers that he was responding to treatment well, his pain level had decreased to a two out of 10, and he had "no complaints" upon his discharge from physical therapy in December 2014.  (*See* AR at 1168, 1175.)

Ultimately, if the medical evidence "is susceptible to more than one rational

interpretation," including one that supports the ALJ's decision, the ALJ's decision "must be upheld."  *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The court must not reweigh the evidence.  *See id*.  Substantial evidence supports the ALJ's finding that Dr. Toraya's opinion was inconsistent with Dr. Toraya's objective findings and other treatment records.  Therefore, the court concludes that the ALJ did not err by discounting Dr. Toraya's opinion.

### 2.      Julie Milasich, O.T.

Mr. Johnson next argues that the ALJ erred by failing to give a germane reason supported by substantial evidence to discount the opinion of Julie Milasich, O.T.  (*See* Op. Br. at 13-16.)  The court disagrees.

Occupational therapists are considered "other sources," and their opinions may be given less weight than those of "acceptable medical sources."  *See* 20 C.F.R. § 404.1513(d).  The testimony of such "other sources" may be discounted if the ALJ "gives reasons germane to each [source] for doing so."  *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (internal citations omitted).

In July 2015, Ms. Milasich examined Mr. Johnson and opined that he was "significantly limited in [his] tolerance for sustained sitting, standing, and walking, and [did] not demonstrate the ability to perform full-time work even at the sedentary level." (*See* AR at 1129.)  The ALJ gave no weight to this opinion because, among other reasons, it was inconsistent with treatment notes and other objective findings in the record.  (*See* AR at 19.)

1   Again, an ALJ need not accept a physician's opinion if it is inadequately

2   supported "by the record as a whole," including treatment records.  *See Batson*, 359 F.3d

3   at 1195; *see also Tommasetti*, 533 F.3d at 1041.  As described above, Mr. Johnson's

4   treatment records were inconsistent with severe limitations in standing, walking, and

5   sitting.  *See supra* § III.A.1.  Therefore, the ALJ provided a germane reason supported by

6   substantial evidence for rejecting Ms. Milasick's opinion that Mr. Johnson could not

7   perform even sedentary work.

8   **B.      Evaluation of Mr. Johnson's Testimony**

9
    Mr. Johnson argues that the ALJ erred in evaluating his subjective complaints.

10  (*See* Op. Br. at 16-17.)  The court disagrees.

11
    Questions of credibility are solely the responsibility of the ALJ.  *See Sample*, 694

12  F.2d at 642.  The court may not second-guess these credibility determinations.  *Allen v.*

13  *Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).  To reject a claimant's subjective complaints,

14  the ALJ must provide "specific, cogent reasons for the disbelief."  *Lester*, 81 F.3d at 834

15  (citation omitted).  The ALJ "must identify what testimony is not credible and what

16  evidence undermines the claimant's complaints."  *Id*.; *see also Dodrill v. Shalala*, 12 F.3d

17  915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

18  the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

19  *Lester*, 81 F.2d at 834.  An ALJ's credibility determination remains valid even if some of

20  the reasons for discrediting a claimant's testimony should properly be discounted, as long

21  as the determination is supported by substantial evidence.  *Tonapetyan v. Halter*, 242

22

23

ORDER - 7

F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ discounted Mr. Johnson's testimony for several reasons, including that the testimony was inconsistent with Mr. Johnson's activities and the treatment notes in the record.  (*See* AR at 17-18.)  An ALJ may discount a claimant's testimony when a claimant's activities of daily living "contradict his other testimony."  *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).  Here, Mr. Johnson alleged that, due to his back and neck pain, he could only stand for 10 to 15 minutes and sit for 20 minutes at a time and that he had problems turning his head.  (*See* AR at 58-60.)  He also stated that he had "bad days" two or three days a week, which then required another two or three days of recovery, during which he spent all day reclining.  (*See* AR at 60-61.)  However, his activities of daily living included mowing the lawn, cooking, and taking out the trash, and his reported hobbies included fishing and driving to church services.  (*See* AR at 1088.) Substantial evidence supports the ALJ's finding that Mr. Johnson's activities cast doubt on the severe limitations to that he alleged.

Also, while a claimant's testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence," *see Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995), a determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the "clear and convincing" reasons requirement.  *See Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).  Here, as described above, several clinical treatment notes and examination findings were inconsistent with the severe limitations to which Mr. Johnson testified.  *See*

ORDER - 8

*supra* § III.A.1.  Therefore, the ALJ provided clear and convincing reasons supported by substantial evidence to discount Mr. Johnson's subjective complaints.

### C.      Medical Vocational Guidelines

Mr. Johnson argues that given his age, previous relevant work, and RFC, the Medical Vocational Guidelines should have mandated a finding of disability under Rule 201.14. (*See* Op. Br. at 9.)  However, Rule 201.14 applies only to claimants limited to sedentary work.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14.  The ALJ found that Mr. Johnson had the RFC to perform light work with some additional limitations.  (*See* AR at 16.)  Therefore, Rule 201.14 does not apply, and the ALJ did not err here.

### D.      Step-Five Finding

Mr. Johnson argues that the ALJ erred at step five by finding that Mr. Johnson could perform work available in significant numbers in the national economy.  (*See* Op. Br. at 5-9.)  The court disagrees.

At step five of the disability evaluation process, the ALJ must show that the claimant is able to perform a job available in significant numbers in the national economy.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(d), (e).  The ALJ can accomplish this through the testimony of a vocational expert.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-01.  To qualify as substantial evidence, the vocational expert's testimony must be reliable in light of the medical evidence.  *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Only if a vocational expert's testimony "appears to conflict" with the

Dictionary of Occupational Titles ("DOT") must the ALJ obtain "a reasonable explanation for the apparent conflict" between the vocational expert's testimony and the DOT.  *See* Social Security Ruling ("SSR") 00-4p, *available at* 2000 WL 1898704, at *4.

Mr. Johnson argues that the vocational expert's testimony contained an unexplained conflict with the DOT.  (*See* Op. Br. at 6-8.)  However, the vocational expert specifically identified that his testimony contained deviations from the DOT.  (*See* AR at 80.)  The ALJ asked the vocational expert to explain the conflict, and the vocational expert replied that he could testify that Mr. Johnson could still perform the jobs identified despite the deviations from the DOT "[b]ased on [his] professional experience and knowledge of the labor market."  (*See id.*)  Mr. Johnson argues that "this brief statement does not qualify as a 'reasonable explanation.'"  (*See* Op. Br. at 7.)  However, SSR 00-4p states that a vocational expert's professional experience is sufficient to reasonably explain a conflict between the vocational expert's testimony and the DOT.  *See* SSR 00-4p at *2.  Therefore, the ALJ did not err by relying on the testimony of the vocational expert.

Mr. Johnson also argues that the ALJ erred by failing to establish that the jobs identified by the vocational expert existed in significant numbers despite erosion based on the additional limitations in the RFC.  (*See* Op. Br. at 8-9.)  However, the ALJ specifically noted that the vocational expert testified that the jobs existed in significant numbers despite any erosion.  (*See* AR at 22.)  Therefore, the ALJ committed no error at step five.

ORDER - 10

## IV.     CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

DATED this 13th day of January, 2017.

JAMES L. ROBART
United States District Judge

ORDER - 11